IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KIMBERLY A. WHEELER,    :

   Plaintiff,        Case No. 3:20-cv-141

  v.          :

MIAMI VALLEY CAREER     JUDGE WALTER H. RICE
TECHNOLOGY CENTER,
           :
   Defendant.

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (DOC. #23); JUDGMENT TO ENTER IN FAVOR OF DEFENDANT
AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

Plaintiff, Kimberly A. Wheeler ("Plaintiff" or "Wheeler"), is a teacher with

the Miami Valley Career Technology Center, an educational institution for high

school and adult students in Clayton, Ohio. She has filed an Amended Complaint

("Complaint"), naming as Defendant her employer, Miami Valley Career

Technology Center ("Defendant" or "MVCTC"). Doc. #13. She alleges three

causes of action in her Complaint: Count I, alleging sex discrimination under Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2, et seq., and

the Ohio Civil Rights Act, Ohio Revised Code §§ 4112.02 and 4112.99; Count II,

alleging age discrimination under the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 621, et seq., and the Ohio Revised Code § 4112.14; and

Count III, alleging retaliation under the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000(e), et seq., and the Ohio Civil Rights Act, Ohio Revised Code §§ 4112.02 and 4112.99.

This matter is before the Court pursuant to a Motion for Summary Judgment ("Motion") filed by the Defendant. Doc. #23. The Motion argues that Plaintiff has not established a genuine issue as to any material fact in this case and that Defendant is entitled to judgment as a matter of law. Defendant relies on depositions and affidavits of administrative staff in support of its argument. *See* Docs. #22-1, 22-2 and 22-3. Plaintiff has filed her Response, including her affidavit and supporting exhibits, Doc. #25[1], and Defendant has filed a Reply. Doc. #27.

For the reasons set forth below, Defendant's Motion is sustained.

## I. Background

Wheeler is a 58-year old teacher in the mathematics department of the Miami Valley Career Technology Center. Doc. #22-2, PageID##277, 282. The MVCTC is one of forty-nine "joint vocational school districts" in the State of Ohio. Doc. #22-1, PageID##158-59. The MVCTC currently serves twenty-nine local school districts in the greater Dayton area. *Id.* at PageID#158. Students in their

---

[1] The Sixth Circuit has stated that "statements in a verified complaint may function as the equivalent of affidavit statements for purposes of summary judgment." *E.g., Frees v. Pioneer Credit Recovery, Inc.*, Case No. 3:09-cv-301, 2012 U.S. Dist. LEXIS 23025, *9 (S.D. Ohio Feb. 23, 2012) (Rice, J.) (quoting *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000). "'[A]ffidavit statements must be based on personal knowledge' and must set forth facts that would be admissible in evidence, and show that the affiant is competent to testify about the matter asserted." *Id.* Plaintiff has not verified her Amended Complaint in this case. Therefore, she cannot rely on the statements contained solely therein to refute Defendant's Motion in this case.

final two years of high school may apply for entry into any of the forty vocational programs that the MVCTC offers. *Id.* at PageID#159. These programs include allied health, plumbing, agriculture and graphic arts. *Id.* at PageID##159-60. Students enrolled at the MVCTC complete their entire course of study on the MVCTC campus. *Id.* at PageID##159-61.

Wheeler has been employed by MVCTC since 1988. *Id.* at PageID#280. She holds a Bachelor of Science degree in Secondary Education for Mathematics, Biology, Chemistry, General Science and Physics from Wright State University. Doc. #22-3, PageID#463. She also possesses a master's degree in educational leadership and principal licensure from the University of Dayton. *Id.* She obtained her teaching license in 1987 and added certificates for supervisor and high school principal in 2002. Doc. #22-2, PageID##278-79. Wheeler is certified to teach courses in mathematics, chemistry, physics, biology and general science. *Id.* at PageID#280. She currently teaches the "Functions in Trig" and "Algebra II" mathematics courses at MVCTC. *Id.* at PageID#282. She also completes yearly developmental coursework to maintain her credentials. Doc. #25-1, PageID##513-19. Additionally, Plaintiff has also been involved with several committees throughout her tenure at MVCTC, including serving as Staff Development Committee Chair and Co-Chair of the Federal Grants Committee. Doc. #22-3, PageID##463-64.

Wheeler also previously served as Proficiency Intervention Coordinator for the MVCTC.[2] Doc. #22-2, PageID#284. She served in this role for approximately five years. *Id.* at PageID#285. As Proficiency Intervention Coordinator, Wheeler created plans to assist students who were struggling academically at MVCTC. *Id.* at PageID##284-88. Wheeler did not supervise or evaluate any other employees in this position. *Id.* at PageID#288.

In 2018, Wheeler applied for three administrator positions with the MVCTC. *Id.* at PageID#138. In April 2018, she applied for the position of Academic Supervisor. *Id.* The Academic Supervisor position focuses on supervision of teachers and oversight of curriculum. *Id.* at PageID##138-39; *see also* Doc. #22-3, PageID##460-62 (job posting outlining responsibilities of Academic Supervisor). This position also prepares departmental budgets. *Id.* at PageID#139. According to Defendant, over seventy applications were reviewed for this position. Doc. #22-3, PageID#449. Wheeler was interviewed by MVCTC for this position. Doc. #22-1, PageID##162-63.

---

[2] There is some debate between Wheeler and MVCTC as to whether this position was an administrator position at MVCTC. Plaintiff believes that it is. *Compare* Doc. #22-3, PageID#463 (Wheeler's resume, citing position as "administrative experience") *with* Doc. #22-1, PageID#170 (deposition testimony of Dr. Kevin Lacey, Assistant Superintendent of Operations for MVCTC, stating that position was not an administrator position and that Wheeler "never held an administrative position with Miami Valley Career Technology Center." Wheeler stated that, based on deposition testimony by Lacey during the prior litigation, this position was an "administrator" position. *See* Doc. #22-2, PageID##290-91. Lacey, however, directly stated in his deposition testimony that the position in which Plaintiff served was not an administrator position. Doc. #25, PageID#537. ("[T]hey do help and assist with other staff members, but they are not an administrator.").

The position of Academic Supervisor was awarded to Beth Manor ("Manor"), an external candidate.  *Id.*  Manor possessed a Bachelor of Science degree in Secondary Social Studies Education from Wright State University.  Doc. #22-3, PageID#472.  She also received a Master of Education degree in Educational Administration, focusing on Curriculum, Instruction, and Professional Development from Wright State.  *Id.*

Prior to her appointment as Academic Supervisor, Manor served as Director of Curriculum and Instruction for Tri-County North Schools for four years.  *Id.* at PageID##451, 472-73.  She also served alongside the Ohio Department of Education to assist in the development of state standardized tests.  *Id.* at PageID#451; Doc. #22-1, PageID#182.  Lastly, Manor had prior experience in staff development from her time as Instructional Coach for the Springfield City School District.  Doc. #22-3*,* PageID##451, 473.  Dr. Kevin Lacey ("Lacey"), the Assistant Superintendent of Operations for MVCTC, stated that Manor's prior experience was attractive to the MVCTC because it was "exactly what she [would] be doing as an academic supervisor."  Doc. #22-1, PageID##179-81.  Dr. Rhonda Phillips ("Phillips"), Assistant Superintendent of Instruction for the MVCTC, stated that Manor was hired "because of her superior qualifications."  Doc. #22-3, PageID##449, 451

In June 2018, Wheeler applied for the position of Health and Consumer Sciences Supervisor.  *Id.* at PageID#140.  This role was similar to the Academic Supervisor position, but "supervise[d] a different area of the curriculum."  *Id.* at

PageID##140-41. This position provided leadership for instructors, coordinated development of curriculum and approved requisition requests. *Id.*; *see also* Doc. #22-3, PageID##452-55 (job posting outlining responsibilities of Health and Consumer Sciences Supervisor). Approximately twenty applications were reviewed for this position. Doc. #22-3, PageID#449. Wheeler was also interviewed by MVCTC for this position. Doc. #22-1, PageID##162-63.

The position of Health and Consumer Sciences Supervisor was awarded to John McGreevey ("McGreevey"), an internal candidate. *Id.* at PageID#148. He was the South Building Principal at the time he received the position. *Id.* at PageID#149. McGreevey possessed a Bachelor of Science degree in Education from Bowling Green State University. Doc. #22-3, PageID#466. He also possessed a Master of Science degree in Education from the University of Dayton. *Id.* Prior to coming to MVCTC, McGreevey was employed by Greenville City Schools as Middle School Principal and Director of Administrative Services. Doc. #22-3, PageID#466-67; *see also* Doc. #22-1, PageID#165. During his tenure at Greenville, McGreevey oversaw the curriculum and staff of the career technology courses. Doc. #22-1, PageID#165. He also had "district level" experience as an administrator after leading the K-8 building project for Greenville. *Id.* at PageID#166. Lacey stated that "[McGreevey's] skill set was perfect" for the position. *Id.* at PageID#167.

Shortly after McGreevey transitioned to his new role on campus, his previous position, South Building Principal, was posted. *Id.* at PageID#149; Doc.

#22-3, PageID##456-57. Wheeler also applied for this position. Doc. 22-1, PageID#138. According to Lacey, this position would function like an "assistant principal" in a traditional school setting. Doc. #22-1, PageID##149-50. The South Building Principal is to enforce the disciplinary rules and oversee "all the due process, all the hearings, [and] all the recommendations for expulsion." *Id.* at PageID#150. The South Building Principal may also have other specialized duties, such as oversight of the National Technical Honor Society program or coordination of the parent/teacher conferences for the district. *See id.* at PageID##150-51 (outlining the specialized duties assigned to McGreevey while in the position of South Building Principal). Approximately sixty-five applications were reviewed for this position. Doc. #22-3, PageID#449. Wheeler was also interviewed by MVCTC for this position. Doc. #22-1, PageID##162-63.

The position of South Building Principal was awarded to Craig Vasil ("Vasil"), an external hire. *Id.* at PageID#151; Doc. #22-3, PageID#468. Vasil was selected out of a "tremendous group of applicants," including two current school superintendents. *Id.* at PageID##174-75. Vasil possessed a Bachelor of Arts degree in Psychology from Wittenberg University. *Id.* at PageID#468. He also possessed a Master of Arts degree in Counseling and Human Development from Walsh University. *Id.* Vasil had prior experience as a principal with Bethel Local Schools. *Id.* at PageID#175. He also had experience as an assistant principal with Vandalia-Butler, a partner district of the MVCTC. *Id.* at PageID#175. His duties in these roles included oversight of the disciplinary process and working toward

7

"positive behavior interventions." *Id.* at PageID#176. Vasil also brought nine years of experience as a school counselor, which was attractive to MVCTC. *See id.* Lastly, Vasil also possessed prior experience in school building projects. *Id.* at PageID#177.

On October 29, 2018, Wheeler filed a formal complaint with the Ohio Civil Rights Commission ("O.C.R.C." or "The Commission"), alleging sex discrimination, age discrimination and retaliation. *Id.* at PageID#255. The Commission reported its findings on August 29, 2019. *Id.* The Commission issued a "probable cause" finding regarding Wheeler's age discrimination and retaliation claims. *Id.* The Commission also issued a "not probable cause" finding on Wheeler's sex discrimination claims. *Id.*

Wheeler subsequently filed a claim with the United States Equal Employment Opportunity Commission ("EEOC"), alleging discrimination under Title VII and the ADEA. *See* Doc. #1-1, PageID#10. The EEOC dismissed Wheeler's claim on December 23, 2019 and informed her of her right to appeal the matter. Doc. #1-1, PageID#10. Wheeler filed her initial claim in the Montgomery County Court of Common Pleas on March 23, 2020. Doc. #4, PageID#51. MVCTC filed a Notice of Removal, removing the case to this Court on April 14, 2020. Doc. #1, PageID#1.

## II. Standard of Review

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a

jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe; credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2726 (3d ed. 1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). If it so chooses, however, a court may consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III. Analysis

Plaintiff "may [] establish a claim of age discrimination under the ADEA or a case of gender discrimination under Title VII through direct evidence." *Bradley v. Rhema-Northwest Operating LLC*, Case No. 16-2493, 2017 U.S. App. LEXIS 19522, *3-4 (6th Cir. 2017). "Direct evidence consists of facts that, 'if believed, require [] the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Id.* (quoting *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 302 (6th Cir. 2016)).

Absent direct evidence, courts analyze claims of age discrimination, sex discrimination and retaliation using circumstantial and indirect evidence. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) ("The *McDonnell Douglas/Burdine* formula is the evidentiary formula applicable not only to claims brought under Title VII, but also [to] claims under the ADEA . . ."); *McGriff v. Beavercreek City Sch. Dist.*, Case No. 3:18-cv-372, U.S. Dist. LEXIS 109334, *15 (S.D. Ohio June 10, 2021) (Rice, J.) (applying the *McDonnell Douglas/Burdine* formula in an employment case alleging age and disability discrimination); *Huston v. U.G.N., Inc.*, Case no. 3:18-cv-62, 2020 U.S. Dist. LEXIS 94056, *21-22 (S.D. Ohio May 29, 2020) (Rice, J.) (applying the *McDonnell Douglas/Burdine* framework regarding claims of retaliation under federal and Ohio law).

Under the *McDonnell Douglas/Burdine* framework, Plaintiff must establish a *prima facie* case of discrimination or retaliation using circumstantial evidence. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). If

Plaintiff establishes her *prima facie* case, the burden of production shifts to Defendant "to articulate some legitimate, nondiscriminatory reason" for its actions. *Id.* at 253 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802). If Defendant articulates a legitimate, nondiscriminatory reason for its actions, the burden shifts back to Plaintiff, who must prove, by a preponderance of the evidence, that the reasons proffered by Defendant "were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 804). The ultimate burden of persuasion remains at all times with Plaintiff. *Id.*

Plaintiff has not alleged any direct evidence of discrimination or retaliation in this case. *See* Doc. #22-2, PageID##302, 391 (Plaintiff deposition testimony stating that no one at MVCTC directly told her that she didn't receive a promotion in 2018 due to her age and/or her gender). Therefore, the Court will proceed by examining the circumstantial evidence in the case. Since all three claims function under the *McDonnel Douglas/Burdine* framework, the Court will analyze the sex and age discrimination claims simultaneously. The Court will then address the retaliation claim. [3]

---

[3] Although Plaintiff may reference her filings with the OCRC and EEOC as part of the factual basis of her claim, the determination of these decisions cannot be relied upon by Plaintiff in her Response to Defendant's Motion. *See e.g.*, *Messer v. Ohio*, Case No. 1:11-cv-246-HJW, 2013 U.S. Dist. LEXIS 129718, *29 (S.D. Ohio Sept. 11, 2013) (Weber, J.) (quoting *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 269 (6th Cir. 2010)) ("[A]lthough plaintiffs attempt to rely on the EEOC's probable cause determination, this is 'presumptively inadmissible' because it suggests that preliminarily there is reason to believe that a violation has taken place and therefore results in prejudice to the defendant.").

### A. Sex and Age Discrimination Claims

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Ohio Revised Code § 4112 contains a similar provision prohibiting discrimination. *See* Ohio Revised Code § 4112.12(A). Federal case law interpreting Title VII is generally applicable to claims brought under Ohio Revised Code § 4112. *See Little Forest Med. Ctr. of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St. 3d 607, 575 N.E.2d 1164 (Ohio 1991).

Additionally, the ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). Ohio Revised Code § 4112 also contains a similar provision to the ADEA. *See* Ohio Revised Code § 4112.14; *see also Sturgeon v. S. Ohio Med Ctr.*, Case No. 1.10-cv-318, 2011 U.S. Dist. LEXIS 135469, *20 (S.D. Ohio Nov. 23, 2011) (Dlott, C.J.) (stating that Ohio law parallels the ADEA and that both claims are analyzed under the same analysis).

### 1. *Prima Facie* case

Defendant first argues that Plaintiff's claims must fail because Plaintiff cannot establish her *prima facie* case on either claim. Specifically, Defendant contends that Plaintiff cannot establish her *prima facie* case because the

individuals who were chosen for the positions were not similarly qualified

individuals. Doc. #23, PageID#482. The Court disagrees.

For Plaintiff to establish her *prima facie* case that she was denied a

promotion based upon her sex or her age, she must establish that "[1] she was a

member of a protected class; [2] that she applied for and was qualified for a

promotion; [3] that she was denied the promotion; and [4] that a similarly

qualified individual who is not a member of the protected class received the

promotion(s) when the plaintiff's request was denied." [4] *Reeves v. Tenn. Farmers*

*Mut. Ins. Co.*, 555 Fed. Appx. 509, 511 (6th Cir. 2014) (outlining a *prima facie* case

of sex discrimination under a "failure to promote" theory); *see also Provenzano v.*

*LCI Holdings, Inc.*, 663 F.3d 806, 812-13 (6th Cir. 2011) (outlining the same factors

to establish a *prima facie* case of age discrimination under a "failure to promote"

theory). The requirement for making a *prima facie* case is "not onerous."

*Burdine*, 450 U.S. at 253.

Specifically, the fourth prong of the *prima facie* analysis "is on the relative

qualifications of the plaintiff and the employee who actually received the

promotion." *Provenzano*, 663 F.3d at 814. The evaluation of the fourth prong

"must be conducted independently of [the defendant's] proffered non-

discriminatory reason and must not conflate the prima facie and the pretext

stages of the *McDonnell Douglas* test." *Id.* at 813. Further, Plaintiff is not required

---

[4] The Defendant has not argued in its Motion or its Reply that Plaintiff has not met the first three
prongs of the *prima facie* analysis. As such, the Court will not analyze them here. *See* Doc. #22-2,
PageID##277, 282 (noting that Plaintiff is a 58-year-old female).

to establish that she had the exact same qualifications as the candidate that was ultimately hired for the position. *Id.* at 814 (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352-53 (6th Cir. 1998)).

The Court believes that Plaintiff has established her *prima facie* case under these facts. Plaintiff possesses a bachelor's and master's degree in the field of education. Doc. #22-3, PageID#463. She has over thirty years of experience as a teacher with MVCTC. Doc. #22-1, PageID#280. She also has experience as Proficiency Intervention Coordinator, which provided her with specialized training in creating plans to help struggling students. Doc. #22-2, PageID##284-88. Lastly, Lacey stated that Wheeler was interviewed for each position because she met the minimum qualifications for all three positions. Doc. #22-1, PageID#163.

Defendant argues that Plaintiff's *prima facie* case cannot be made because the other candidates were "superior" in nature. Doc. #23, PageID#482. That argument, however, cannot be considered at this stage of the Court's analysis. *Provenzano*, 663 F.3d at 813. Plaintiff must only establish that her qualifications were "similar" in nature to the person who received the position, which she has done in this case. *See Reeves* 555 Fed. Appx. at 511.

## 2. Legitimate, Non-Discriminatory Reason

Defendant also contends that, if Plaintiff can establish her *prima facie* case on either claim, the "superior" qualifications of the candidates that were hired meet its burden required under the second prong of the *McDonnell Douglas/Burdine* analysis. Doc. #23, PageID#478. To meet this burden, "the

15

defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 255. "This is a burden of production; although '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons,' it must raise 'a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 778 (6th Cir. 2016) (quoting *Cline v. Catholic Diocese*, 206 F.3d 651, 666 (6th Cir. 1999)); *see also Burdine*, 450 U.S. at 256 ("[T]he employer's burden is satisfied if he simply 'explains what he has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'"). The Court believes that Defendant has met its burden on this issue.

Lacey stated that Defendant hired Vasil for the position of South Building Principal because he possessed qualities that Defendant found attractive. Doc. #22-1, PageID##175-77; *see also* Doc. #22-3, PageID##468-71 (Exhibit 6, resume of Vasil). Vasil had previous experience as principal of Bethel Local Schools. Doc. #22-1, PageID#175. During his tenure at Bethel High School, Vasil led the school through a campus building project. *Id.* at PageID#177. This allowed him to become familiar with the process followed by the Ohio Facilities Construction Commission. *Id.* Vasil also had previous experience as an assistant principal for Vandalia-Butler Schools, a partner school of MVCTC. *Id.* Moreover, Vasil had nine years of experience as a school counselor on his resume. *Id.* at PageID#176. Lacey stated that this experience was attractive to Defendant and led to Defendant's selection of Vasil over Plaintiff. *Id.* at PageID#177.

16

Lacey also stated that Jon McGreevey ("McGreevey"), the applicant hired for the position of Health and Consumer Sciences Supervisor, brought an extensive amount of experience as an administrator to Defendant. *See id.* at PageID##165-67; *see also* Doc. #22-3, PageID##466-67 (Exhibit 5, resume of McGreevey). McGreevey previously served as an administrator for Greenville City Schools. *Id.* at PageID#165. Specifically, McGreevey oversaw the career tech educational components of the Greenville City School district. *Id.* This oversight included programming of curriculum and teaching in the classroom. *Id.* at PageID##165-66. McGreevey also had "district level" administrator experience. *Id.* at PageID#166. Additionally, McGreevey had experience in leading the K-8 school through a building project. *Id.* Lacey stated that this unique skill set was "perfect" for the position of Health and Consumer Sciences Supervisor. *Id.* at PageID#167.

Phillips stated that Manor was hired for the position of Academic Supervisor "because of her superior qualifications." Doc. #22-3, PageID##449, 451; *see also* Doc. #22-3, PageID##472-74 (Exhibit 7, resume of Manor). Manor previously served as Director of Curriculum and Instruction for Tri-County North Schools. *Id.* She also previously served on statewide committees to develop state standardized tests. *Id.* Lastly, Manor previously served as Instructional Coach at Springfield City Schools, focusing on the supervision and development of teachers. *Id.* Phillips stated that Manor's experience "related directly to the position of Academic Supervisor" and made her "the superior candidate." *Id.*;

17

*see also* Doc. #22-1, PageID##179-81 (Lacey stating that Manor's prior experience was attractive because it was "exactly what she [would] be doing as an academic supervisor").

Based on the deposition of Dr. Lacey, the affidavit of Dr. Phillips and the exhibits outlining the resumes of each candidate, the Court believes that Defendant has proffered legitimate, non-discriminatory reasons for each hire contested by Plaintiff. All three candidates came to the MVCTC with extensive administrator experience. Additionally, each candidate possessed unique skills, such as experience in building projects or experience on statewide committees, which Defendant found attractive during the hiring process. *See* Doc.#22-1, PageID##167, 176, 179-81. As such, the Defendant his discharged its burden of production by "produc[ing] evidence of legitimate non-discriminatory reasons." *Burdine*, 450 U.S. at 256.

### 3. Pretext

Since Defendant has offered legitimate, non-discriminatory reasons for not promoting Plaintiff, the burden shifts back to Plaintiff to establish that the reasons proffered by Defendant are pretextual. *Jackson*, 814 F.3d at 776. "Pretext may be shown 'either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994) (quoting *Burdine*, 450 U.S. at 255-56); *see also Stokes v. Detroit Pub. Sch.*, 807 Fed. Appx. 493, 500 (6th Cir. 2020)

(citing *Miles v. South Cent. Human Res. Agency, Inc.*, 946, F.3d 883, 888 (6th Cir. 2020)) (Pretext may be established by showing that the proffered reasons: "(1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) [were] insufficient to motivate the employer's action[s]."). These categories are not rigid and allow for Plaintiff to attempt to establish pretext in any manner that she feels is appropriate. *Stokes v. Detroit Pub. Sch.*, 807 Fed. Appx. at 500.

Plaintiff, in her Response to Defendant's Motion for Summary Judgment, listed several examples of Defendant's conduct that would establish that Defendant's reasons for failing to promote her were pretextual in nature. *See* Doc. #25, PageID##506-09.[5] Since Plaintiff has not formally categorized her arguments, the Court will attempt to separate and analyze each argument.

### a. "Internal Promotion" Policy

Plaintiff alleges in her Response that Defendant has an unwritten policy of internal promotion and that this policy "significantly undercuts" Defendant's arguments regarding the superiority of the three candidates who were chosen for the contested positions. *Id.* at PageID#506; *see also* Doc. #22-2, PageID##300, 335.

---

[5] Plaintiff raises an additional argument that has no merit. Plaintiff refers to Manor's statement on her application that her personal and professional experience were "not applicable" to the position of Academic Supervisor compared to Beth Manor. This statement is misleading. Manor's application for the Academic Supervisor position asked the applicant what qualities and/or experience would make them stand out as a "quality candidate for the position in which [she] was applying." *Id.* Even if Manor stated in her application that her skills were "not applicable" to make her a quality candidate, as indicated by Plaintiff, the application would have been considered alongside Manor's resume and cover letter during the hiring process. *See id.*

Defendant denies that this policy exists. Doc. #22-1, PageID#152. Plaintiff also contends that several internal candidates have been promoted without previous administrative experience. Doc. #25, PageID#508. Plaintiff believes that this unwritten policy, coupled with Defendant's previous internal hires, raises a genuine issue of fact concerning pretext. The Court disagrees.

In *Sullivan v. Delphi Auto Sys. Corp.*, this Court examined whether an employer was entitled to summary judgment regarding claims of age and sex discrimination for failing to promote the plaintiff, a female accountant. 198 F. Supp. 2d 952, 954. (S.D. Ohio 2002) (Rice, C.J.). The plaintiff in *Sullivan* alleged, *inter alia*, that the employee handbook established an internal promotion policy, because it indicated that "[d]efendant would extend employment opportunities to qualified employees and applicants, regardless of age, race, sex, religion and national origin." *Id.* at 961. This Court disagreed, stating that the plaintiff "overstate[d]" the language in the employee handbook. *Id.* at 960. Additionally, this Court considered testimony from management, which supported the theory that that the company "look[ed] to both external and internal candidates" to fill any open positions. *Id.*

The Court believes that the Plaintiff has not set forth a genuine issue of material fact concerning pretext under this theory. The Plaintiff, at most, has made an unsupported conclusion that MVCTC has an unwritten policy concerning internal promotions and, pursuant to that policy, she should have been promoted. Doc. #25, PageID#506. Although she attempts to support this theory by showing

20

that several people have been promoted internally, Plaintiff provides no real evidence that these people were hired pursuant to any "internal promotion" policy. *See generally* Doc. #25. Plaintiff also provides no conclusive evidence that Defendant acted outside of this unwritten policy when she was denied any of the promotions in this case. *Id.* This argument, like that of the handbook in *Sullivan*, has been "overstated" by Plaintiff in this instance. *Sullivan*, 198 F. Supp. 2d at 961.

Additionally, Lacey stated in his deposition that Defendant does not have an internal hiring policy and that MVCTC seeks "to select the best qualified candidate . . . [someone] who is going to provide for the students of our district." Doc. #22-1, PageID#153. The Court finds that this testimony supports the theory that MVCTC "look[s] to both external and internal candidates" to fill open positions. *Sullivan*, 198 F. Supp. 2d at 961. As such, when examining all the evidence in a light most favorable to Plaintiff, the Court believes that Plaintiff has failed to establish a genuine issue of material fact concerning pretext under this theory.

### b. Plaintiff as "Superior Candidate" Compared to Hired Employees

Plaintiff also contends that Defendant's reasons for failing to promote her were pretextual because Plaintiff's qualifications were superior when compared to those of Vasil, McGreevey and Manor. To support this assertion, Plaintiff points to her "excellent work record" during her thirty-three years of teaching at MVCTC. Doc. #25, PageID##503, 506. She also cites her educational background and

21

certifications *Id.* Lastly, Plaintiff also argues that she does have administrator-

level experience as a proficiency intervention coordinator. *Id.* at PageID##507-08.

When taken together, Plaintiff asserts that these qualities make her the "superior"

candidate" for each of the three contested positions in this case. *See id.* at

PageID##506-08. The Court disagrees.

Employers are "free to choose among qualified candidates" when making

decisions to hire managerial employees. *Bender v. Hecht's Dep't Stores*, 455 F.3d

612, 626 (6th Cir. 2006) (quoting *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987).

At the same time, the Court does not "require employers to make perfect

decisions, nor forbid them from making decisions that others may disagree with."

*Id.* (quoting *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996).

When establishing a theory that the aggrieved party was a "superior

candidate" as compared to the successful candidate, "[r]elative qualifications

establish triable issues of fact as to pretext where the evidence shows that either

(1) the plaintiff was a plainly superior candidate, such that no reasonable

employer would have chosen the [successful] applicant over [the plaintiff], or (2)

plaintiff was as qualified as if not better qualified than the successful applicant,

and the record contains 'other probative evidence of discrimination.'"

*Provenzano*, 663 F.3d at 815 (citing *Bartell v. Gates*, 421 F. App'x 485, 490-91 (6th

Cir 2010)); *see also Bender*, 455 F.3d at 627 (quoting *Verniero v. Air Force Acad.*

*Sch. Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983)) ("A laxer standard would

move this court from its proper role of preventing unlawful employment practices

22

to the illegitimate role of acting as a 'super personnel department,' overseeing and second-guessing employers' business decisions.").

In *Provenzano*, the Sixth Circuit examined whether the district court properly sustained the defendant's motion for summary judgment on a discrimination claim under a failure to promote theory. *Id.* at 810-11. In that case, Provenzano alleged, *inter alia*, that the defendant's reasoning for failing to promote her to a retail management position within the company was pretextual because she was the superior candidate. *See id.* at 815-16. First, Provenzano contended that the successful candidate did not possess the requisite qualifications for the position as posted. *Id.* at 815. Secondly, Provenzano argued that the defendant utilized her in assisting other stores before denying her the promotion to management. *Id.* at 816.

Provenzano also argued that she was as qualified as the successful candidate and attempted to establish "other probative evidence of discrimination." *Id.* Specifically, she argued that she had more experience with the company, additional experience in retail supervision, experience assisting other stores, and superior educational credentials. *Id.* at 817. Provenzano also pointed to the company's "record of promotions, transfers, and demotions" of others on staff with the company. *Id.* This included examining the ages of those in management positions. *Id.*

On appeal, the Sixth Circuit held that the grant of summary judgment by the district court was proper. *Id.* at 818. The court stated that the lack of a high

23

school diploma was not dispositive on the issue because it was not listed as "mandatory" on the job posting. *Id.* at 815-16. Specifically, the court held that "[t]he job description does not indicate and no evidence, except Provenzano's personal belief, suggests that any of the listed qualifications were mandatory or weighed heavily in the promotion process." *Id.* at 816. As such, the Sixth Circuit held Provenzano had not established pretext under this theory.

Additionally, the Sixth Circuit also held that summary judgment was correct because Provenzano did not provide "other probative evidence of discrimination." *Id.* at 818. The defendant testified that it was attempting to restructure the store to attract a younger demographic. *Id.* at 817-18. Additionally, the evidence alluded to by Provenzano only mentioned the age of the customer demographic, but not that of the employees. *Id.* As such, the Sixth Circuit agreed that Provenzano had not established a genuine issue of fact under this theory.

Here, Plaintiff alleges that her qualifications made her the superior candidate. *See* Doc. #25, PageID##506-08. Plaintiff has been with Defendant as an employee for thirty-three years. Doc. #22-1, PageID#280. She also states that she possessed "a master's degree, principal and supervisor certificates, excellent performance evaluations and no disciplinary history." Doc. #25, PageID#506; Doc. 22-2, PageID#311 (Wheeler stating she received "positive feedback" on her evaluations); Doc. 22-3, PageID##463-65 (Plaintiff's resume). Additionally, Plaintiff believes that her tenure with MVCTC should weigh heavier than the prior administrator experience of Vasil, McGreevey and Manor. *See* Doc. #22-2,

24

PageID#301 ("[H]aving experience at the district that you're going to serve is more important than administrative experience.").

Although Plaintiff's resume and her tenure with the MVCTC is extensive, the Court must also examine the experience and resumes of Vasil, McGreevey and Manor to determine whether Plaintiff was the "plainly superior candidate." *Provenzano*, 663 F.3d at 815. For instance, Vasil, McGreevey and Manor all possessed extensive administrator experience, with each having at least four years of prior experience as an administrator. *See* Doc. #22-1, PageID##165-67 (outlining the qualifications of McGreevey); Doc. #22-1, PageID##175-77 (outlining the qualifications of Vasil); and Doc. #22-3, PageID##451 (outlining the qualifications of Manor); Doc. #22-3, PageID##466-67 (resume of McGreevey); Doc. #22-3, PageID##468-71 (resume of Vasil); Doc. #22-3, PageID##472-74 (resume of Manor). Wheeler, however, did not possess any administrator experience when applying for the open positions in 2018. *See* Doc. #22-1, PageID#170 (Lacey stating that Wheeler's position as proficiency intervention specialist was not considered an "administrator" position and that Wheeler never held an administrator position with MVCTC); *see also* Doc. #22-3, PageID##463-65 (resume of Wheeler stating that position was "administrative").[6]

---

[6] Even if the Court considered Plaintiff's experience as proficiency intervention coordinator to be administrative in nature, the Court does not believe that this inference, when considered in light of the extensive resumes of the three successful candidates, would be enough to establish a genuine issue of fact as to whether Plaintiff was the "plainly superior candidate" when compared to Vasil, McGreevey and Manor. *Provenzano*, 663 F.3d at 815.

Furthermore, all three successful candidates brought specialized experience to MVCTC that Plaintiff did not possess. Vasil and McGreevey had prior experience with building construction and expansion projects. Doc. #22-1, PageID#165, 177. Manor had previous experience in partnering with the Ohio Department of Education on developing statewide standardized tests. Doc. #23, PageID#451. These skills were attractive to Defendant during the hiring process for the respective positions. *See* Doc. #22-1, PageID##165-67; Doc. #22-1, PageID##175-77; Doc. #22-3, PageID#451.

Moreover, Plaintiff has not alleged that the three successful candidates failed to meet any mandatory requirements for the positions in which they were hired. *See* Doc. #25, PageID#508. In fact, Plaintiff states in her Response that "it cannot be disputed that the three individuals [Vasil, McGreevey and Manor] were qualified for the positions" and that "some of them had impressive items on their resumes." *Id.* at PageID##508-09. Plaintiff's only contention is that she also possessed "very impressive items on her resume." *Id.* at PageID#510. Without more, Plaintiff has not established a genuine issue of material fact regarding whether she was the "plainly superior candidate" when compared to Vasil, McGreevey or Manor. *Provenzano*, 663 F.3d at 815 (citing *Bartell v. Gates*, 421 F. App'x 485, 490-91).

Plaintiff has also failed to raise a genuine issue of material fact regarding any "other probative evidence of discrimination" in the evidence. *Id.* Plaintiff points to the employment statistics of the MVCTC administrator staff, stating that

26

only four of the twenty-one positions were held by females. Doc. #22-2, PageID#349. She compared these statistics to that of the Equal Employment Opportunity statistics for the State of Ohio, which Wheeler stated were averaging at 52% male and 48% female. *Id.* at PageID##349-50.[7]

Based on these statistics, Plaintiff makes a threadbare conclusion that "[t]his creates an inference of sex discrimination." Doc. #25, PageID#506. At best, Plaintiff attempts to use these statistics to argue that her interview was biased, but that conclusion is not supported by additional evidence beyond Plaintiff's personal belief. *See* Doc. #22-2, PageID#350 (Plaintiff asserting that her interviews were biased after comparing EEOC statistics to MVCTC administrator statistics). Since Plaintiff has not pointed in the record to any "other probative evidence of discrimination," her argument also fails under this prong of *Provenzano*. 663 F.3d at 815.

As such, when taking all of the evidence, in the light most favorable to Plaintiff, the Court does not believe that Plaintiff has established a genuine issue of material fact concerning pretext under this theory. Since Plaintiff has not established a genuine issue of material fact concerning pretext under either theory, Defendant is entitled to summary judgment on the age and sex discrimination claims in this case, as a matter of law.

---

[7] The Court has not found any admissible evidence in the record that would permit these statistics to be introduced at trial. Even if the statistics were deemed to be admissible at trial, they would not be sufficient to create a genuine issue of fact under this theory.

## B. Retaliation Claim

Plaintiff states in her Complaint that Defendant retaliated against her because she previously filed an EEOC claim. Doc. #13, PageID#108.[8] Specifically, Plaintiff claims that Defendant's failure to promote her throughout her tenure with the MVCTC supports her claim of retaliation. *Id.* Defendants counter that Plaintiff cannot establish her *prima facie* case because she cannot establish a "causal connection" between Plaintiff's filing of an EEOC claim and Defendant's decision to hire Manor, McGreevey and Vasil for the contested positions. Doc. #23, PageID##493-95.[9]

---

[8] Plaintiff makes a vague allegation, stating that the MVCTC retaliated against her by making the notice of her filing public during a board meeting. *See* Doc. #22-2, PageID##366-67. Defendant, in its Motion, cited Ohio Revised Code § 121.22, which is "liberally construed" and states that public officials are "to take official action and to conduct all deliberations upon official business only in open meetings" unless prohibited by law. Plaintiff did not respond with any case law or statutory language that this disclosure of her OCRC filing at the board meeting was prohibited. Therefore, it cannot support her claim for retaliation here.

[9] Plaintiff also states that two separate interactions with employee Charles Brads support her retaliation claim. The Court disagrees. First, Plaintiff states that the inclusion of Charles Brads on her interview panel for the Academic Supervisor position "poisoned her interview" and established a causal connection for her retaliation claim. *See* Doc. #25, PageID##506-07. Plaintiff cites *Barresi v. Donahoe*, No. CV-07-1337-PHX-GMS, 2011 U.S. Dist. LEXIS 100157, in support, stating that Brads' inclusion into the interview for the 2018 Academic Supervisor position was retaliatory in nature because Brads previously received the Academic Supervisor position over Plaintiff in 2012. Doc. #25, PageID#506-07. Plaintiff challenged the denial of that 2012 promotion (and subsequent hiring of Brads) in an earlier filing with the EEOC. *See* Doc. #25, PageID##506-07. *Baressi* is distinguishable from this case at bar because *Baressi* dealt with the inclusion of a person on an interview panel who was the subject of a <u>pending</u> EEOC filing. *See Baressi*, 2011 U.S. Dist. LEXIS 100157 at *4 (emphasis added). Here, Plaintiff's original 2012 EEOC Complaint was not pending when she interviewed for the 2018 Academic Supervisor position. *See* Doc. #13, PageID#105. Second, Plaintiff claims that Brads made a comment towards her, asking "Kim, notice how quiet it got when you walked into the room?" Doc. #25, PageID#507. This comment was not made during the 2018 interview process but occurred sometime between 2012 and early 2013. *See* Doc. #26-1, PageID#540-41 (affidavit of Lacey and accompanying email to support that the comment was discussed during Plaintiff's initial EEOC claim). Additionally, Brads was not the ultimate decisionmaker regarding the Academic Supervisor position. *See* Doc. #22-3, PageID# 451 (stating that Dr. Phillips was the sole person responsible for deciding who would receive a second-

Title VII prohibits an employer from retaliating against an employee who has opposed any discriminatory practice. 42 U.S.C. § 2000e-3(a). Ohio Revised Code § 4112 contains a similar provision prohibiting retaliation. *See* Ohio Revised Code § 4112.12(I). Federal case law interpreting Title VII is generally applicable to claims brought under Ohio Revised Code § 4112. *See Little Forest Med. Ctr. of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St. 3d 607, 575 N.E.2d 1164 (Ohio 1991); *see also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002) ("In analyzing claims arising under Ohio Rev. Code § 4112, Ohio courts have adopted the framework established in federal case law concerning Title VII and the [ADEA]").

### 1. *Prima Facie* Case of Retaliation

To establish a *prima facie* case of retaliation, a plaintiff "must present evidence that (1) he engaged in a protected activity; (2) [the employer] was aware that he had engaged in such activity; (3) [the employer] took an adverse employment action against him; and (4) there is a causal connection between the protected activity and [the employer's] adverse action." *Huston*, 2020 U.S. Dist. LEXIS 94056 at *21.[10] This burden is "not onerous" and is "easily met." *Id.* (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

---

round interview for the Academic Supervisor position). Therefore, neither interaction with Brads supports Plaintiff's claim of retaliation in this instance.

[10] The Defendant has not argued in its Motion or its Reply that Plaintiff has not met the first three prongs of the *prima facie* analysis regarding her retaliation claim. As such, the Court will assume that they have been met and will not analyze those prongs in its analysis. *See Colston v. Cleveland Pub. Library*, No. 12-4103, 2013 U.S. App. LEXIS 7690, *18 (6th Cir. 2013) (stating that a failure to promote is considered an adverse employment action).

The final prong requires that the plaintiff "must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a[n] [EEOC claim.]" *Nguyen*, 229 F.3d at 563; *see also Mys v. Mich. Dep't of State Police*, 886 F.3d 591, 599-600 (6th Cir. 2018) (stating that the plaintiff must furnish evidence that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."). Although no one factor is dispositive on this issue, "evidence that defendant treated plaintiff different from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen*, 229 F.3d at 563. Lastly, "an intervening cause between the protected activity and an adverse action dispels any inference of causation." *Jones v. Vilsack*, 861 Fed. Appx. 58, 62 (6th Cir. 2021).

One relevant factor in determining whether causation has been established is "whether an adverse action occurs close in time to the employer learning of a protected activity," which is referred to as "temporal proximity." *Id.* (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 550 (6th Cir. 2008)). "The more time that elapses between the employer learning of an employee's protected activity and the subsequent adverse employment action, the less temporal proximity between those acts, thereby requiring more evidence of retaliatory motive from the employee." *Id.* (citing *Kirlenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 664-65 (6th Cir. 2020)).

30

"Temporal proximity may establish a *prima facie* case only if the temporal proximity is 'very close.'" *Barrett v. Lucent Techs.*, 36 Fed. Appx. 835, 843 (6th Cir. 2002) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)); *see also Jones*, 861 Fed. Appx. at 63 (seven months between employee's amendment to an EEOC claim and the denial of his accommodation request was too long to establish a causal connection without additional evidence); *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (two to five months, without additional evidence, is insufficient to create a triable issue of causation).

Here, Plaintiff cannot establish her *prima facie* case for retaliation because she has not established a causal connection between the filing of her EEOC claim and the denial of a promotion by Defendant. Initially, it is unclear to the Court which EEOC claim Plaintiff refers to in her initial Complaint. *See* Doc. #13, PageID#108. In either case, the Court does not believe that Plaintiff has set forth a *prima facie* case of retaliation.

Plaintiff cannot claim that her most recent filings with the Ohio Civil Rights Commission and the EEOC establish a causal connection with her denial of a promotion, because those filings were made after Plaintiff was denied each of the contested positions. *See* Doc. #22-1, PageID#255 (stating that Plaintiff challenged the hiring of Vasil, McGreevey and Manor on the grounds of age and sex discrimination and retaliation); *see also* Doc. #13, PageID#103 (stating that Plaintiff filed her OCRC claim on October 29, 2018, and her EEOC claim on December 23, 2019). Since all three hiring decisions came before these filings, a causal

connection cannot be established between the two filings and her denial of the promotions at issue in this case.

Temporal proximity forecloses Plaintiff's use of her original claim to establish a genuine issue of material fact regarding pretext. Defendant's initial EEOC claim was filed prior to December 2012. *See* Doc. #13, PageID#105. In the six years since the filing of this claim, Plaintiff has not pointed to any evidence in the record of retaliation or actions against her except the denial of the promotions at issue in this case. *See generally* Doc. #13. This amount of time, without more, cannot establish a *prima facie* case for retaliation. *Barrett*, 36 Fed. Appx. at 843.

After examining the evidence in a light most favorable to Plaintiff, the Court believes that Plaintiff has not raised a genuine issue of material fact on the retaliation claim. As such, Defendant is entitled to judgment as a matter of law.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment, Doc. #23, is SUSTAINED.

Judgment shall be entered in favor of Defendant, Miami Valley Career Technology Center, and against Plaintiff, Kimberly A. Wheeler.

The captioned case is hereby terminated upon docket records of the United States District Court for the Southern District of Ohio, Western Division at Dayton.

Date: March 14, 2022

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE